UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CARA C.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C19-5000 JCC

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE

Plaintiff seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the ALJ erred by rejecting several medical and lay witness opinions and failing to account for their consistency with each other. Dkt. 10. As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

I.    BACKGROUND

Plaintiff is currently 32 years old, has at least a high school education, and has worked as a cook helper. Dkt. 8, Admin. Record (AR) 660. Plaintiff applied for benefits in July 2012, alleging disability as of October 6, 2011, the day she was struck by a motor vehicle. AR 70, 649. Plaintiff's applications were denied initially, on reconsideration, and in an August 2014 ALJ

decision. AR 69, 83, 97, 116, 12-23. Plaintiff appealed to this court, which reversed the 2014 ALJ decision and remanded the case for further administrative proceedings. AR 767. After additional ALJ hearings were held in July 2017 and April 2018, the ALJ issued a decision in October 2018 finding Plaintiff not disabled. AR 671, 720, 642-62.

II.     THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the October 2011 alleged onset date.

Step two: Plaintiff has the following severe impairments: cervical myofascial pain syndrome, cubital tunnel in left upper extremity, carpal tunnel syndrome in the right upper extremity, anxiety disorder, moderate depression, and attention deficit hyperactivity disorder.

Step three: Plaintiff's impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can perform light work, lifting 20 pounds maximum and 10 pounds frequently, and standing/walking 6 hours per day. She cannot crawl or climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, bend, squat, kneel, crouch, and climb ramps and stairs. She can use her upper extremities frequently for handling and fingering, but her left upper extremity is limited to occasional feeling. She can understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting. She is limited to occasional and superficial interaction with the general public and frequent interaction with supervisors and coworkers, in a setting that does not involve working in a highly interactive or interdependent workgroup.

Step four: Plaintiff cannot perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

AR 645-62. The Appeals Council did not assume jurisdiction, thus making the ALJ's decision

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 2

the Commissioner's final decision.[3]

III.  DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954, 957 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Although the ALJ found that Plaintiff has both physical and mental impairments, Plaintiff challenges only the ALJ's conclusions regarding her mental impairments. Dkt. 10.

**A.  Medical Opinions**

An ALJ may only reject the uncontradicted opinion of an examining doctor by giving

---

[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

"clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Even if an examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons. *Id.* The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. §§ 404.1502(a), (d), (e); 416.902(a), (i), (j). An ALJ may reject the opinion of a non-acceptable medical source, such as a therapist, by giving reasons germane to the opinion. *Id.*

### 1. John M. Haroian, Ph.D.

Dr. Haroian examined Plaintiff in June 2012 and opined that she had marked limitations in learning new tasks, performing complex tasks, and completing a normal workday and workweek without interruptions from psychologically based symptoms. AR 526-27. He opined that she had a moderate limitation in performing routine tasks without undue supervision. AR 526.

The ALJ accepted Dr. Haroian's limitations on learning and performing complex tasks, but rejected limitations on simple tasks. AR 654. Plaintiff argues that the ALJ "failed to address Dr. Haroian's [opinion that] 'she is likely to need repeated instruction and regular and consistent supervision – in completing [simple] tasks.'" Dkt. 10 at 8 (quoting AR 526). But the ALJ rejected Dr. Haroian's limitations on simple tasks because cognitive testing showed minimal

deficits and because Plaintiff was able to learn simple tasks in her current job. AR 654-55. Each of these was a sufficiently specific and legitimate reason and was supported by substantial evidence. An ALJ may reject a doctor's opinion that is contradicted by her own and other medical examiners' reports. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Dr. Haroian, as well as other examiners, found largely or entirely normal cognitive abilities. *See*, *e.g.*, AR 529, 1144. Conflict with a claimant's activities is another specific and legitimate reason for rejecting a doctor's opinion. *Ghanim*, 763 F.3d at 1162; *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (inconsistency with the claimant's work activity is a proper reason to reject a medical opinion). Plaintiff's ongoing employment showed that she could learn and perform at least simple tasks. AR 654. The Court concludes the ALJ did not err by rejecting Dr. Haroian's limitations on learning and performing simple tasks.

The ALJ also rejected Dr. Haroian's opinion that Plaintiff was markedly limited in completing a normal workday and workweek, based on inconsistency with Plaintiff's part-time work activities. AR 655. Plaintiff argues that cognitive abilities have no bearing on her ability to complete a normal workday/week. Dkt. 10 at 7. However, the ALJ relied on cognitive abilities only to reject the limitation on learning new simple tasks, not to reject the workday/week limitation. AR 654-55. Plaintiff also argues that the ability to work 20 hours per week does not show that she can work 40 hours per week. Dkt. 10 at 7. Plaintiff argues that the ALJ "improperly substituted his judgment for that of the psychologist, Dr. Haroian, by citing no evidence to support his conclusion that Plaintiff can work full-time on a sustained basis." Dkt. 14 at 2. The ALJ's decision must be "upheld if supported by inferences reasonably drawn from the record." *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Here,

1 the ALJ found that Plaintiff's ongoing part time job as a prep cook involved "a great deal of
2 performance pressure and social interaction, including working with a team and being in close
3 proximity to customers." AR 653. The ALJ inferred that, because Plaintiff was working part
4 time "at a higher exertional, skill and social level" than her RFC permitted, she would be able to
5 work more hours if the work required simpler tasks and less public interaction. AR 655. These
6 findings and inferences were supported by substantial evidence. Plaintiff testified that her part-
7 time job was stressful largely because she continually needed to ask coworkers and supervisors
8 for assistance and explain why she was not able to perform all of her work tasks by herself. AR
9 730-31 ("I have to fight to get my help with what I need done. … I have to fight with people
10 because of scheduling conflicts, the fact that I can't work certain types of shifts or get underneath
11 something or clean something and I can't do that."). The ALJ reasonably interpreted the
12 evidence to conclude that if Plaintiff's assigned work no longer exceeded her capacity, the
13 excess stress would be relieved and she would be able to work more hours. Although other
14 interpretations may be possible, the ALJ's interpretation of the evidence was rational and thus
15 must be upheld. *See Burch*, 400 F.3d at 680-81. The Court concludes the ALJ did not err by
16 discounting Dr. Haroian's opinion that Plaintiff was markedly limited in completing a normal
17 workday and workweek.

18 The Court concludes the ALJ did not err in his treatment of Dr. Haroian's opinions.

19       2. <u>Jennifer Irwin, M.D.</u>

20 Dr. Irwin examined Plaintiff in November 2012 and opined that she was markedly
21 impaired in the ability to complete a normal workday and workweek, and moderately impaired in
22 the ability to maintain regular attendance because of social impairments. AR 550, 554. The ALJ
23 rejected both of these limitations as contradicted by Plaintiff's successfully maintaining part-time

employment in a more socially demanding job than her RFC allowed. AR 655-56. The ALJ's conclusion that limiting social interactions in the workplace would reduce the stress on Plaintiff and enable her to work more hours was a reasonable inference supported by substantial evidence. This was a specific and legitimate reason to discount Dr. Irwin's opined limitations.

The ALJ rejected Dr. Irwin's opined attendance limitation on the additional ground that the term "moderate" was of little value. AR 655-56. The ALJ's reasoning is not entirely clear, but earlier in the decision the ALJ had explained that he interpreted "moderate" impairments to require no more than mild limitations. AR 655 ("Arguably, the assessed [RFC limitation to] occasional and superficial interaction with the general public is consistent with a moderate impairment" in public interaction.). However, the ALJ imposed no attendance limitation at all in the RFC. *See* AR 647-48. This was not a specific and legitimate reason to discount the attendance limitation.

The ALJ rejected Dr. Irwin's opinion on completing a normal workday/week because the results of her one-time examination were insufficient to support the opinion. AR 656. To the extent that the ALJ suggested that a single examination can never give a doctor adequate information to opine on a claimant's ability to complete a normal workday/week, the ALJ erred. Psychological examinations are designed to elicit information from which examiners can infer more than they can observe directly; a qualified examiner need not observe a claimant for an entire day at work in order to infer the claimant's ability to complete a workday. The ALJ essentially made a medical judgment that Dr. Irwin had insufficient information to infer Plaintiff's ability to complete a normal workday/week, a judgment an ALJ is not qualified to make. The ALJ also concluded that Dr. Irwin's observation that Plaintiff "persist[ed] to finish tasks" during the examination contradicted her opined limitation on completing a normal

workday/week. AR 552; AR 656. Dr. Irwin opined that Plaintiff's ability to complete a normal workday/week "without interruptions from a psychiatric condition" was impaired; the psychiatric conditions she diagnosed Plaintiff with were panic, depressive, cognitive, and learning disorders. AR 554. Plaintiff persisting to complete short tasks in an examination does not contradict Dr. Irwin's opinion that these psychiatric conditions would interfere with completion of an entire day or week of work. This was not a specific and legitimate reason to discount the workday/week limitation.

Inclusion of erroneous reasons was harmless, however, because inconsistency with Plaintiff's work activity was a specific and legitimate reason to discount Dr. Irwin's opined limitations on attendance and completing a normal workday/week. *See Molina*, 674 F.3d at 1117 (error harmless if "inconsequential to the ultimate disability determination"); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (inclusion of erroneous reasons to discount claimant's testimony was harmless because "remaining valid reasons supporting the ALJ's determination are not 'relatively minor'"). The Court concludes the ALJ did not err by discounting Dr. Irwin's opinions.

3. Erin Brower, LMHC

Ms. Brower examined Plaintiff and filled out a Psychological/Psychiatric Evaluation form in June 2012. AR 520-23. Plaintiff argues that the ALJ "did not directly address" Ms. Brower's opinion that Plaintiff's symptoms "will interfere with her ability to sustain employment" and thus erred by failing to provide a germane reason to discount Ms. Brower's opinion. Dkt. 10 at 11. However, the ALJ expressly "agree[d]" with Ms. Brower's opinion that Plaintiff's "symptoms 'impact' her ability to work" and accordingly imposed several limitations in the RFC. AR 655 (quoting AR 521); *see Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 8

(9th Cir. 2010) (ALJ is not required to provide reasoning to reject limitations that are reasonably incorporated into the RFC). Plaintiff has not identified any concrete functional limitation Ms. Brower opined that the ALJ failed to include in the RFC. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005-06 (9th Cir. 2015) (ALJ need not consider a recommendation in the absence of specific and identified functional limitations). The Court concludes Plaintiff has not shown error in the ALJ's treatment of Ms. Brower's opinions.

### 4. William J. Chalstrom, Ph.D.

Dr. Chalstrom examined Plaintiff in October 2017. AR 1590. Plaintiff asserts that her reports of "fatigue, feelings of worthlessness, nightmares[,] flashbacks … and panic attacks," which Dr. Chalstrom found reliable, "would undoubtedly interfere" with her ability to work full time. Dkt. 10 at 11-12 (citing AR 1593). Dr. Chalstrom, however, did not opine that Plaintiff could not work full time. The ALJ did not err by failing to address a nonexistent opinion. In fact, the ALJ expressly "agree[d]" with Dr. Chalstrom's opinion that a "hectic job" like being a cook "might be a little too much for" Plaintiff and, accordingly, imposed several limitations in the RFC. AR 657 (quoting AR 1593); *see Turner*, 613 F.3d at 1223. Plaintiff has not shown error.

### 5. Rebecca J. Fraynt, Ph.D.

Dr. Fraynt administered several psychological tests in January 2015. AR 1248-51. She reported that Plaintiff "may have clinically significant difficulties on impulse control tasks." AR 1250. Plaintiff asserts that such difficulties "could logically interfere" with her ability to work full time and the ALJ erred by failing to address this "opinion." Dkt. 10 at 12. Dr. Fraynt, however, did not opine that Plaintiff's ability to work full time was impaired. The ALJ did not

err by failing to address a nonexistent opinion, and Plaintiff has not identified any concrete functional limitation opined by Dr. Fraynt. *See Rounds*, 807 F.3d at 1005-06.

**B.     Nonmedical Opinions**

An ALJ may discount lay witness testimony by giving a germane reason. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017).

1.     Jenna Dalesky

Ms. Dalesky, a Vocational Rehabilitation Counselor with the Washington state Division of Vocational Rehabilitation (DVR), determined that due to her impairments Plaintiff required a "modified or flexible work schedule, extra rest periods, job modifications, or other accommodations" in order to work. AR 334. Plaintiff's DVR file includes a report from a Community Based Assessment, in which Plaintiff was placed in an entry level position in the "Welcome Center" of a YMCA. AR 944. The report states that Plaintiff "worked 3-4 hour shifts[, which] would appear to be about the limit as [her] stamina and anxiety become an issue the longer she works without frequent breaks." AR 944.

Plaintiff argues that these documents together constitute an "opinion" that she could not work full time, which the ALJ erred by rejecting. Dkt. 10 at 13-14. The ALJ gave Ms. Dalesky's assessment "very little weight" because it relied heavily on Plaintiff's self-reports, which the ALJ discounted, and because the limitations were "unworkably vague." AR 657. Reliance on properly discounted self-reports was a germane reason to discount this lay opinion, because it is sufficient even under the higher "specific and legitimate" standard. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (reliance on properly-discounted self-reports was a specific and legitimate reason to discount a doctor's opinion). Plaintiff argues that the ALJ erred by relying on the difference between DVR's and the Social Security Administration's

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 10

goals. Dkt. 10 at 13.  However, the ALJ made clear that he rejected Ms. Dalesky's report because, in serving DVR's mission to return clients to work, "it makes sense to rely on a claimant's subjective assessment of her capabilities," while an ALJ, in contrast, must independently evaluate the claimant's self-reports.  AR 657.  It was not the difference in the agency's missions, but the reliance on Plaintiff's self-reports, that provided a germane reason to discount Ms. Dalesky's report.

The vagueness of Ms. Dalesky's report was another germane reason to discount it.  For example, Plaintiff relies on Ms. Dalesky's assessment that she required a "modified *or* flexible work schedule, extra rest period, job modifications, *or* other accommodations."  AR 334 (emphasis added).  This list of alternatives provides no identifiable concrete limitation that the ALJ failed to incorporate.  Indeed, by including numerous limitations in the RFC, the ALJ incorporated "job modifications" or "other accommodations."  *See Turner*, 613 F.3d at 1223.  The Court concludes the ALJ did not err in his treatment of Ms. Dalesky's assessments.

Regarding the Community Based Assessment report, an ALJ "need not discuss *all* evidence presented to her.  Rather, she must explain why 'significant probative evidence has been rejected.'"  *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (alteration in original) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).  The report addressed Plaintiff's work in customer service and questioned "whether Customer Service is really a good fit" for her.  AR 945.  The ALJ limited Plaintiff to only "occasional and superficial interaction with the general public," precluding customer service work.  AR 648.  As discussed above, an assessment of Plaintiff's abilities in socially demanding work such as customer service was not significant probative evidence of Plaintiff's abilities in work permitted by her RFC.  Plaintiff argues that the report shows an "inability" to work more than four-hour shifts.  Dkt. 10 at 14.

Even if the report indicated difficulty working more than four-hour shifts in a customer service job, it was not significant probative evidence of Plaintiff's ability to work in less socially demanding jobs permitted by the RFC. Therefore, the ALJ did not err by failing to address it in his decision. *See Vincent*, 739 F.2d at 1394–95.

The Court concludes the ALJ did not harmfully err in his treatment of the DVR material.

### C. Consistency of Opinions

Plaintiff argues throughout her brief that the ALJ should have given more weight to the opinions discussed above because they were "generally consistent" with each other. Dkt. 10 at 1. When analyzing medical opinions and opinions on medical issues, an ALJ must consider several factors, including consistency with the record as a whole. 20 C.F.R. §§ 404.1527(c)(4), (f)(1); 416.927(c)(4), (f)(1). However, an "ALJ is not required to make an express statement that she considered all the factors outlined in 20 C.F.R. § 1527(c)." *Kelly v. Berryhill*, 732 F. App'x 558, 562 n. 4 (9th Cir. 2018).

Here, in evaluating opinions, the ALJ clearly considered consistency with other opinions. AR 657 (finding one of Dr. Chalstrom's opinions "is consistent with Dr. Irwin's opinion"); *see also* AR 648 ("I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927."). The ALJ also considered consistency with the record as a whole, discounting Dr. Haroian's and Dr. Irwin's opinions as inconsistent with Plaintiff's work activity. AR 654-56. Plaintiff has not shown that the ALJ erred by failing to consider consistency with the record.

Moreover, consistency is not some superseding factor that can revive properly rejected opinions. Each of the opinions discussed above was permissibly rejected or was incorporated

into the RFC. Plaintiff does not show any error by simply claiming that the opinions are consistent with each other.

The Court concludes the ALJ did not err by failing to properly consider the consistency of the opinions.

### D. Pain Syndrome

The ALJ found that Plaintiff's severe impairments included cervical myofascial pain syndrome. AR 645. Plaintiff argues that the ALJ erred in failing to "address[] the ramifications from this impairment." Dkt. 10 at 15. An ALJ need only include in the RFC limitations that are supported by substantial evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). Plaintiff has not identified any functional limitations resulting from her pain syndrome that the ALJ failed to incorporate into the RFC. *See* Dkt. 10 at 15-16. The Court concludes the ALJ did not err in his treatment of Plaintiff's pain syndrome.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

DATED this 30th day of July, 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE